UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SONDRA K. OWENS, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     vs. | ) No. 1:15-cv-01751-JMS-MPB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Sondra K. Owens applied for disability insurance benefits and supplemental security income in August 2012. [Filing No. 14-5 at 2.] She alleged a disability onset date of January 1, 2007, [Filing No. 14-5 at 2], but she later voluntarily amended it to August 16, 2012, [Filing No. 14-5 at 30]. Her application was denied initially and upon reconsideration, [Filing No. 14-4 at 4; Filing No. 14-4 at 24], and a hearing was held before Administrative Law Judge T. Whitaker (the "ALJ") on March 13, 2014, [Filing No. 14-2 at 40-77]. On May 30, 2014, the ALJ issued an opinion concluding that Ms. Owens was not disabled as defined by the Social Security Act. [Filing No. 14-2 at 23-35.] The Appeals Council denied Ms. Owens' request for review on September 4, 2015, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 14-2 at 2.] Ms. Owens filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1 at 2.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

1

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step

four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Owens was forty-nine years old at the time she applied for disability benefits. [Filing No. 14-5 at 2.] She has a high school diploma, [Filing No. 14-2 at 45], and has previously worked in various positions, including poultry eviscerator in a chicken factory, housekeeper, and cashier, [Filing No. 14-2 at 45-51].

In support of her claim of disability, Ms. Owens cites the combined effects of various medical problems, including asthma, headaches, diabetes with neuropathy, and lower back pain.[1] [Filing No. 17 at 5-10.] Ms. Owens' back pain is the primary condition related to the issues she raises on appeal. She had an MRI on February 4, 2014, revealing "significant degenerative disc disease and degenerative changes of posterior facets within the lumbar spine." [Filing No. 14-9 at 34.]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Owens is not disabled. [Filing No. 14-2 at 35.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Owens meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since her alleged onset date. [Filing No. 14-2 at 26.]

- At Step Two of the analysis, the ALJ found that Ms. Owens has the following severe impairments:

    > obesity; degenerative disc disease in the lumbar and thoracic spine; sclerosis of the SI joints with hip pain; asthma; diabetes with neuropathy and polyneuropathy; history of migraine headaches; cellulitis of the left middle finger post burn; deformity of third finger from prior osteomyelitis; status post partial amputation of the left long finger; and paradoxical excision of the left middle finger following MRSA and amputation with persistent swan neck deformity.

---

[1] Both parties provided a detailed description of Ms. Owens' medical history and treatment in their briefs. [Filing No. 17 at 5-10; Filing No. 22 at 2-8.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Owens, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

[Filing No. 14-2 at 26.] The ALJ further found that Ms. Owens has multiple other nonsevere impairments that do not affect her ability to perform basic work-related tasks. [Filing No. 14-2 at 26.]

- At Step Three of the analysis, the ALJ found that Ms. Owens does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1. [Filing No. 14-2 at 27.] In arriving at that conclusion, the ALJ specifically considered various listings, but ultimately concluded that Ms. Owens did not meet any of them. [Filing No. 14-2 at 26-27.] Ms. Owens does not challenge that determination on appeal.

- The ALJ concluded that Ms. Owens has the residual functional capacity ("RFC") to perform:

  > a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour day; stand and walk, in combination, 6 hours in an 8-hour day; occasionally balance, kneel, stoop, crouch, crawl and climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently finger with the non-dominant left upper extremity; limited to occasional exposure to extreme cold, extreme heat, humidity, and respiratory irritants such as fumes, odors, dusts, and gases; limited to unskilled tasks; and limited to work that allows [Ms. Owens] to be off task 5 percent of the workday, in addition to regularly scheduled breaks.

  [Filing No. 14-2 at 28-29.]

- At Step Four of the analysis, the ALJ found that Ms. Owens was capable of performing past relevant work as a cashier. [Filing No. 14-2 at 32.]

- Although the ALJ found that Ms. Owens is capable of performing past relevant work, the ALJ alternatively found at Step Five that there are jobs that exist in significant numbers in the national economy that Ms. Owens can perform. [Filing No. 14-2 at 33-34.] The ALJ relied on a vocational expert ("VE") to identify jobs that Ms. Owens can perform given her

5

- age, education, work experience, and RFC, and listed three examples—small parts assembler, electronics worker, and housekeeper. [Filing No. 14-2 at 33-34.]

- Based on these findings, the ALJ concluded that Ms. Owens is not disabled as defined by the Social Security Act and thus is not entitled to the requested supplemental security income. [Filing No. 14-2 at 35.]

Ms. Owens requested that the Appeals Council review the ALJ's decision, but that request was denied on September 4, 2015, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 14-2 at 2-5.] Ms. Owens filed this civil action pursuant to 42 U.S.C § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

### III.
### DISCUSSION

Ms. Owens' appeal focuses on the ALJ's alleged failure to adequately address evidence of her back pain, arguing that the ALJ should have ordered a consultative examination to determine Ms. Owens' functional limitations from a February 2014 MRI. [Filing No. 17.] Ms. Owens argues that this failure affected her RFC determination and resulted in a lack of substantial evidence upon which the ALJ's ultimate conclusion regarding her disability could be based. [Filing No. 17 at 11-14.]

In response, the Commissioner maintains that there is substantial evidence in the record to support the ALJ's decision. [Filing No. 22 at 9.] The Commissioner emphasizes that Ms. Owens' physical examinations were virtually normal and that she had a normal gait, range of motion, and no neurological deficits. [Filing No. 22 at 11.] The Commissioner also emphasizes the medical opinions in the record on which the ALJ relied. [Filing No. 22 at 11.]

In reply, Ms. Owens again contends that substantial evidence does not support the ALJ's RFC determination. [Filing No. 23 at 1-2.] She rejects the Commissioner's arguments to the

contrary because the ALJ, "just like Defense Counsel . . . are lay persons not qualified to translate such a significant MRI into functional terms." [Filing No. 23 at 2.] Thus, Ms. Owens asks this Court to reverse the ALJ's decision and remand her case. [Filing No. 23 at 4.]

It is well established that the ALJ must provide 'an accurate and logical bridge' between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Craft*, 539 F.3d at 673). In doing so, the ALJ should take into account all of the relevant evidence, including both medical and nonmedical evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The ALJ is not required to address every piece of evidence that has been presented, but she must explain the bridge between the evidence and the conclusion sufficiently enough to allow the reviewing court to assess the validity of the ultimate findings and afford the claimant meaningful judicial review. *Craft*, 539 F.3d at 673 (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). Additionally, "an ALJ may not ignore an entire line of evidence that is contrary to her findings," and, if conflicting evidence exists, she must explain why the conflicting evidence was overcome by the evidence on which she relied. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)).

The ALJ also has a duty to develop a full and fair record to facilitate a determination of disability. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). As a general matter, an ALJ is not required to order a consultative examination, but she may do so if medical evidence of a claimed impairment is not sufficient or if a consultative examination is otherwise necessary. 20 C.F.R. §§ 416.912(f), 20 C.F.R. § 416.917, 20 C.F.R. § 416.945(a)(3); *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). Generally, the "court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional

consultative examinations) are needed in order to accomplish that goal." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) (citing *Nelms*, 553 F.3d at 1098).

The Seventh Circuit has held, however, that "[a] consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established." *Poyck*, 414 F. App'x at 861. Thus, failure to submit new and potentially decisive medical evidence to medical scrutiny can constitute reversible error because it allows the ALJ to impermissibly play doctor, which the Seventh Circuit has emphasized is a "clear no-no." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The burden is on the claimant to introduce some objective evidence that further development of the record is necessary, particularly if the claimant is represented by counsel. *Poyck*, 414 F. App'x at 861 (citing *Skinner*, 478 F.3d at 844). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand[;] . . . [i]nstead, a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms*, 553 F.3d at 1098 (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)).

In support of her argument that the ALJ erred by not ordering a consultative examination, Ms. Owens points to an MRI she had in February 2014 indicating that she has "[s]ignificant degenerative disc disease and degenerative changes of posterior facets within the lumbar spine." [Filing No. 14-9 at 34.] The MRI was referenced at the hearing before the ALJ, and Ms. Owens testified that she had started taking prescription pain medication as a result but that it was only helping "a little bit." [Filing No. 14-2 at 54.] In the decision denying Ms. Owens the requested disability benefits, the ALJ did not expressly acknowledge the MRI other than to summarily conclude that "[a]lthough diagnostic workup shows degenerative disc disease, the claimant's

8

physical examinations have been routinely normal." [Filing No. 14-2 at 31.] Instead, the ALJ primarily relied on two consultative examinations from 2012 and some previous medical records from office visits with treating physicians to conclude that the "evidence does not support significant limitations secondary to back pain" for Ms. Owens. [Filing No. 14-2 at 31-32.]

The Court agrees with Ms. Owens that the February 2014 MRI is sufficient objective evidence to meet her burden to show that the ALJ erred by not further developing the record. Instead of ordering a consultative examination for Ms. Owens based on the recent, objective MRI evidence to determine any resulting functional limitations, the ALJ impermissibly played doctor by concluding without a medical opinion that it did "not support significant limitations." [Filing No. 14-2 at 31.] Moreover, the fact that the MRI was referenced at Ms. Owens' hearing but the ALJ summarily dismissed it in her written decision further supports the Court's decision, as does the fact that the ALJ heavily relied on opinion evidence from two agency consultative examinations that was two years old and medical records that did not relate to Ms. Owens' back pain. [*See* Filing No. 14-2 at 31 (the ALJ's reference to Ms. Owens' "virtually normal" physical examinations that happened when Ms. Owens sought treatment for depression and scabies, not back pain or her spinal condition) (referring to Filing No. 14-9 at 27-32).] In other words, because the ALJ so significantly downplayed the results of Ms. Owens' February 2014 MRI in her decision denying benefits, the Court concludes that she failed to build a logical bridge from that contrary evidence to her conclusion. *See Villano*, 556 F.3d at 563 (holding that the ALJ "may not dismiss a line of evidence contrary to the ruling"). This provides an alternate basis for the Court's decision to reverse and remand the ALJ's decision.

The Court is also guided by the Seventh Circuit's decision in *Goins*. 764 F.3d at 680. In that case, two consulting state-agency physicians reviewed the claimant's medical records and

concluded that the claimant was able to work full time. *Id.* at 678-79. A subsequent MRI revealed degenerative disc disease, stenosis, and a Chiari I malformation that had not appeared on the earlier MRI that was submitted to the state-agency physicians as part of the medical records they were asked to review. *Id.* The ALJ did not seek the opinion of an additional physician regarding the results of the second MRI, and found that the claimant was not disabled, thereby denying the requested benefits. *Id.* at 679. The Seventh Circuit Court reversed and remanded the case, stating that "[t]he administrative law judge's critical failure, however, was the failure to obtain a medical report on the results of the [most recent] MRI," because the results of the MRI were otherwise unaccounted for in the records that formed the basis of the expert opinions on which the ALJ relied. *Id.* at 681. The Seventh Circuit concluded that this was reversible error because the failure to submit new and potentially decisive medical evidence to medical scrutiny allowed the ALJ to impermissibly play doctor, which is a "clear no-no." *Id.* at 680.

In sum, the Court agrees with Ms. Owens that, under these circumstances, the ALJ's failure to obtain a consultative examination to determine any functional limitations from Ms. Owens' significant degenerative disc disease is reversible error. Alternatively, the ALJ's decision must be reversed because she so significantly downplayed the results from Ms. Owens' February 2014 MRI, such that the ALJ failed to build a logical bridge from the evidence to her conclusion by ignoring contrary evidence. Thus, the ALJ's decision must be reversed and remanded.[2]

---

[2] Ms. Owens also argues that the ALJ erred by relying on vocational expert testimony elicited in response to an improperly developed hypothetical question. [Filing No. 17 at 14.] Because the Court has already concluded that this case must be reversed and remanded, it follows that the resulting RFC and questions posed to the vocational expert were also erroneous.

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Owens benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

Date: June 2, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Howard D. Olinsky
OLINSKY LAW GROUP
holinsky@windisability.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov